**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____

GARY FRY, individually,

    Plaintiff,

v.

AURORA HOUSING AUTHORITY,
a quasi-municipal corporation of the City of Aurora, Colorado,

    Defendant.

---

**COMPLAINT WITH JURY DEMAND**

---

COMES NOW, the Plaintiff, Gary Fry, by and through his attorney's, Thomas H. Mitchiner, of Mitchiner Law, LLC, for his complaint against Defendant Aurora Housing Authority states and alleges as follows:

**Nature of the Case**

1. This is a wage and hour case, brought pursuant to the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et. seq.*, as amended [FLSA]; and for common law breach of contract and promissory estoppel. Gary Fry [Fry] alleges that Defendant Aurora Housing Authority [AHA] intentionally failed to pay him for all the time he spent for the benefit of AHA.

**Jurisdiction and Venue**

2. Jurisdiction is asserted pursuant to 28 U.S.C. §§ 1331, 1367(a).

3. This is an action authorized and instituted pursuant to the FLSA.

4. The claims in issue arose in the city of Aurora, Arapahoe County, Colorado.

5. All claims arose in the Judicial District of this Court and venue is proper pursuant to 28 U.S.C. § 1391(b), (c).

## Parties

6. Plaintiff Gary Fry [Fry] is a resident of the state of Colorado his address is 18201 E. Union Dr., Aurora, CO 80015.

7. Fry worked for AHA from April 20, 2015 to December 28, 2017.

8. Fry most recently held the position of Lead Maintenance Technician.

9. As Lead Maintenance Technician Fry earned $21.26 per hour.

10. Fry is an employee as defined by the Fair Labor Standards Act.

11. Defendant Aurora Housing Authority [AHA] is a quasi-municipal corporation of the City of Aurora, Colorado, with its principal place of business located at 2280 S. Xanadu Way, Aurora, CO 80014.

12. AHA was established by an action of the Aurora City Council in February of 1975.

13. AHA owns and manages more than 680 units of rental housing, and provides safe, decent, affordable housing to the Aurora community.

14. AHA's work week is Saturday through Friday.

15. AHA is an employer as defined by the Fair Labor Standards Act.

**General Allegations**

16. Fry entered into an employment contract with AHA to work as an hourly employee.

17. AHA paid Fry hourly to ensure that the maintenance of all housing units he had responsibility for was performed in a timely manner.

18. Throughout his time at AHA Fry worked at several different properties.

   a. From April 20, 2015 through December 2016 Fry worked at the First Avenue property as a Maintenance Technician.

   b. From December 2016 to November 2017 Fry worked at the Willow Park property as a Maintenance Technician.

   c. From November 2017 until December 2017 Fry worked at the Trolley Park and Fletcher properties as a Lead Maintenance Technician.

19. While working at the Trolley Park and Fletcher properties two days a week Fry had one person working under his supervision.

20. As a Lead Maintenance Technician Fry was responsible for (a) understanding the comprehensive maintenance needs of all the properties in his assigned portfolio; (b) directing Maintenance Technicians; (c) performing maintenance and repair work on units and buildings within his assigned portfolio from work orders; (d) performing pre-move out inspections; (e) for assuring the rent ready condition of vacant units prior to the new resident moving in; (f) completing the required documentation for work completed, including but not limited to work orders, preventative maintenance logs, and snow logs; (g) keeping track of any necessary vehicle maintenance including

fueling, cleaning, and stocking of tools and supplies; (f) maintaining a clean and orderly shop including inventory management; (h) attending property management/maintenance meetings as scheduled; (i) completing the ordering of supplies for turns, and work orders;  (j) on-call night and week-end work required as per schedule, and being available for calls from the assigned Maintenance Techs; (h) distributing work orders for the assigned property portfolio to the appropriate Technicians; (k) for initiating preventative maintenance schedules; (l) responsible for maintaining a safe working environment; (m) managing the Maintenance Technicians that are assigned to your portfolio in an efficient and appropriate manner so that operations can run as smoothly as possible.

21. To respond to afterhours emergency maintenance requests AHA required Fry to work on-call.

22. Week-day on-call status began after the completion of the work-day and continued until work resumed the following work day.

23. Weekend on-call status began on Friday after 5:00 pm and ended on Monday at 8:00 am.

24. AHA paid employees a minimum of one and a half hours for each on-call event.

25. AHA did not pay millage for driving to the emergency.

26. AHA paid employees at their regular rate unless they had already worked over 40 hours in a week or if it was an AHA recognized holiday.

27. AHA required employees to clock in and clock out during each call.

4

28. Employees that were on-call had to (a) be accessible by phone, (b) return the call within fifteen minutes, (c) had to arrive within one hour or less after receiving a call, d) must not be intoxicated or under the influence when responding to a call, and e) must wear a Housing Authority uniform shirt.

29. An employee that failed to respond to an emergency on-call would be counseled and disciplined up to and including termination, depending on the nature of the emergency.

30. AHA did discipline employees that failed to respond to an emergency call.

31. The amount of calls Fry would receive afterhours varied, from one a day to sixteen per day.

32. On-call employees could be required to work at any of AHA"s properties.

33. All the afterhours emergency maintenance requests did not require Fry to drive to the property, Fry could address some of them by simply explaining what to do to the resident.

34. AHA required technicians to be on-call in order to protect its properties from damage that could occur if a maintenance problem was not addressed immediately.

35. If AHA did not have a maintenance person on-call after hours and a pipe broke during the middle of the night, significant damage to the property could occur.

36. A pipe busting and not being addressed immediately could cause mold issues to occur and cause the wood to warp and rot.

37. It would cost AHA a significant amount to repair this damage if the issue is not addressed immediately.

38. AHA avoids these costs by paying maintenance technicians to work on-call afterhours.

39. AHA contracted with Alpha Page to assist with afterhours emergency maintenance requests.

40. If a resident needed assistance with an emergency, they would call the office which would automatically route the call to Alpha Page.

41. The resident would relay their needs to the Alpha Page operator.

42. The Alpha Page operator would then call the on-call technician.

43. Alpha Page kept records of every afterhours call Fry received.

44. Initially Fry worked on-call every three weeks. Eventually Fry had to work on-call every two weeks and would have two weeks off.

45. Often even when Fry was not on-call he had to respond to calls because employees under him did not answer the phone.

46. AHA's on-call policy severely restricted Fry's ability to enjoy his time off work, as he could not participate in activities he enjoys.

47. While on-call, and even when he was not on-call Fry could not do the following activities (a) hike in the mountains, (b) ride his motorcycle in town or in the mountains, (c) go to a movie, (d) enjoy alcoholic drinks at a dinner or barbeque, (e) perform any work on his car or house that would take more than one hour, (f) go grocery shopping.

48. One time in order to avoid being disciplined and to comply with AHA's on-call policy Fry had to leave Wal-Mart in the middle of a shopping trip.

49. Further, in order to comply with AHA's requirements Fry had to drive around with all his tools in the trunk of his car, because he did not know which property he could be called to work at.

## First Claim for Relief
(Breach of Contract – Payment of wages for all hours worked)

50. The Plaintiff hereby incorporates the preceding paragraphs as if stated, fully herein.

51. Fry and AHA entered into a contractual arrangement in which AHA agreed to employ Fry and to compensate him wages and residency for all hours he spent predominantly for the benefit of AHA.

52. During his time with AHA, Fry agreed to perform work for AHA, as the Lead Technician.

53. Fry complied with all conditions precedent and other requirements of the employment contract.

54. AHA did not compensate Fry for all the time he spent working predominantly for AHA's benefit, thereby breaching the employment contract.

55. As a result of this breach, Fry suffered damages in an amount to be proved at trial.

## Second Claim for Relief
(Promissory Estoppel – Payment of wages for all hours worked)

56. The Plaintiff hereby incorporates the preceding paragraphs as if stated, fully herein.

57. AHA promised to compensate Fry for all the time he spent predominantly for the benefit of AHA.

58. Fry relied on this promise and worked for AHA.

59. To his detriment in reliance on this promise Fry did not search for other jobs and performed unpaid work for AHA.

60. AHA did not honor its promise to compensate Fry.

61. As a result, Fry suffered damages, in an amount to be proved at trial.

## Third Claim for Relief
(Fair Labor Standards Act – Failure to pay Overtime)

62. The Plaintiff hereby incorporates the preceding paragraphs as if stated, fully herein.

63. Fry worked forty hours a week as a Lead Technician.

64. From April 2015 to December 2016 Fry worked on-call every three weeks.

65. From December 2016 to November 2017 Fry worked on-call every other week.

66. From November 2017 to December 2017 Fry worked on-call for two weeks and then would have two weeks off.

67. AHA compensated Fry for the time he spent at AHA facilities performing work after regular hours.

68. AHA did not compensate Fry for the time he spent waiting to be on-call.

69. This time is compensable because Fry had to refrain from performing the following activities (a) hike in the mountains, (b) ride his motorcycle in town or in the mountains, (c) go to a movie, (d) enjoy alcoholic drinks at a dinner or barbeque, (e) perform any work on his car or house that would take more than one hour, (f) go grocery shopping.

70. Fry could not perform these activities because if he did, he would not be able to respond to a phone call within 15 minutes or arrive at the site within 1 hour.

71. AHA's on-call policy severely restricted Fry's ability to enjoy personal time.

72. AHA knew or should have known that its on-call policy made it impossible for Fry to enjoy his time off.

73. AHA did not pay him overtime for these hours.

74. As a result, Fry suffered damages, in an amount to be proved at trial.

**WHEREFORE**, Gary Fry respectfully prays for a judgment in this favor and against Defendant Aurora Housing Authority awarding Plaintiff:

A. Against Aurora Housing Authority for expectation damages resulting from the breach of contract and promissory estoppel;

B. Against Aurora Housing Authority for wages and compensation owed under the Fair Labor Standards Act;

C. Against Aurora Housing Authority for liquidated damages available to Fry under the Fair Labor Standards Act;

D. Against Aurora Housing Authority, for attorney fees under the Fair Labor Standards Act;

E. All issues triable by a jury to be determined by a jury;

F. Costs; and

G. Such other relief as the Court deems proper.

## JURY DEMAND

The Plaintiff hereby demands a trial by jury of all issues so triable in the above-captioned civil action.

Respectfully submitted this 1 April 2019.

  Mitchiner Law, LLC

  By:

  /s/ Thomas H. Mitchiner
  Thomas H. Mitchiner, #47465
  *Attorney for Plaintiff*

Address of Plaintiff:

18201 E. Union Dr., Aurora, CO 80015